# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple (Black)<br>Model: 7 Plus<br>IMEI: 3594680848322274 | Case No. 23MJ8127 |

**FILED**
3/3/2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   vyc   DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
❏ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Navarre Perry incorporated herein by reference.

❏ Continued on the attached sheet.
❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
NAVARRE PERRY (Affiliate) Digitally signed by NAVARRE PERRY (Affiliate)
Date: 2023.03.03 09:44:18 -08'00'
*Applicant's signature*

Border Patrol Agent Navarre Perry
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:   03/03/2023   

_____
*Judge's signature*

City and state:   San Diego, California   HON. JILL L. BURKHARDT, US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:** Apple (Black)
Model: 7 Plus
IMEI: 3594680848322274
Seized from Catherine HICKEY
(Target Device #3)



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target DeviceS for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 24, 2023, up to and including February 24, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Devices;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Navarre Perry, United States Border Patrol Agent (currently Task Force Agent assigned to the Drug Enforcement Administration), having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**   T-Mobile
Model: Black Revvl 6 Pro
IMEI: 869589062083649
Seized from Catherine HICKEY
**(Target Device #1)**

**A-2:**   OnePlus (T-Mobile)
Model: Blue Nord N200 DE2118
IMEI: 990017695029203
Seized from Catherine HICKEY
**(Target Device #2)**

**A-3:**   Apple (Black)
Model: 7 Plus
IMEI: 3594680848322274
Seized from Catherine HICKEY
**(Target Device #3)**

as further described in Attachments A-1, A-2, and A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation of Catherine HICKEY for transportation of illegal alien Javier GUEVARA-Perez (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from Catherine HICKEY on or about February 23, 2023, incident to her arrest. The Target Devices are currently in the possession of the Department of

Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a Task Force Agent (TFA) assigned to the Drug Enforcement Administration (DEA). I have been employed as a Federal Agent for the U.S. Border Patrol since May of 2010. In preparation for my duties as a Federal Agent, I completed the U.S. Border Patrol Academy at the Federal Law Enforcement Training Center as well as DEA Task Force Officer School. I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience in and have received training with respect to conducting investigations of violations of Titles 8, 18, 19, and 21 of the United States Code.

5. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

9. Through the course of my training and experience as a USBP Agent as well as my training and experience as a DEA TFA, I am also familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) participated in and conducted investigations of violations of various federal criminal laws, including those related to narcotics violations; (2) worked as a surveillance agent and observed and recorded movements of individuals suspected of trafficking in drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and, (5) interviewed criminal defendants, witnesses and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics, the collection of money proceeds of narcotics trafficking, and methods of money laundering used to conceal the nature of the proceeds.

10. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

11. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above

## FACTS SUPPORTING PROBABLE CAUSE

12. On February 23, 2023, the El Centro Sector (ELC) Field Intelligence Team (FIT) was conducting anti-smuggling operations in the El Centro Sector Border Patrol Area of Responsibility (AOR) near Calexico, California. FIT Agents are Border Patrol Agents assigned to the El Centro Sector Intelligence Unit (SIU) who work in a plain clothes capacity and drive unmarked agency vehicles to covertly perform their law enforcement duties. At approximately 12:00 p.m., a Supervisory Border Patrol Agent-Intelligence relayed information that a suspected illegal alien had climbed down the United States/Mexico International Boundary Fence near the Gran Plaza Outlets in Calexico. FIT Agents initiated mobile and foot surveillance in an attempt to locate the individual, later

identified as Javier GUEVARA-Perez (GUEVARA). GUEVARA was observed entering the Lucky Brand store in the Outlets. FIT Agents on foot observed as GUEVARA changed clothes in the store, left the store and met with a male subject, later identified as FLORES and an unknown female individual. FIT agents observed as GUEVARA followed behind the couple and boarded into a white Chevrolet Cruze (Cruze) bearing California license plates that was parked in the outlets parking lot. Record checks on the Cruze showed the vehicle was registered to an address in Calexico, California.

13. At approximately 1:05 p.m., FIT Agents initiated mobile surveillance on the Cruze. FIT agents observed FLORES was the driver of the Cruze and drove the Cruze out of the Outlets parking lot and travelled eastbound on 2nd Street. FLORES drove through the city of Calexico until he entered a driveway in the 800 block of Heffernan Avenue. Approximately five minutes later, FLORES left the residence and drove north on Imperial Avenue to continue north on Highway 111. FIT Agents followed FLORES and observed as it turned westbound on Heber Road and stopped at Kennedy's Market in Heber. FLORES then walked towards a silver Chevrolet Silverado bearing California license plates while GUEVARA exited the Cruze and got into the Silverado. The Silverado was previously identified as an alien smuggling conveyance by FIT Agents from a prior smuggling event. FIT Agents terminated mobile surveillance on the Cruze to initiate mobile surveillance on the Silverado.

14. FIT Agents continued surveillance on the Silverado and observed as the driver, later identified as HICKEY, travelled to Holtville. HICKEY stopped at a 7-Eleven convenience store in Holtville and a male subject, later identified as ARAMBURO, along with a female individual, later identified as RAMIREZ, exited the Silverado to go into the convenience store and then left to get back into the Silverado after a few minutes. FIT agents observed as HICKEY drove the Silverado through Holtville to a ranch also located at in Holtville. FIT Agents maintained visual of HICKEY as she drove down a dirt road towards a motorhome that was parked inside the ranch property. HICKEY was then observed leaving the ranch property in the Silverado alongside a dark-colored Hummer

with unknown license plates.  FIT Agents maintained surveillance on HICKEY and the Silverado. HICKEY eventually travelled towards the city of Brawley and FIT Agents maintained mobile surveillance on HICKEY. At approximately 3:15 p.m., a Border Patrol Agent Special Operations Supervisor initiated a vehicle stop of the Silverado. Agents identified HICKEY as the driver and RAMIREZ sitting in the front passenger seat with ARAMBURO sitting in back passenger seat. Record checks revealed ARAMBURO had an active federal warrant and ARAMBURO was taken into custody. HICKEY and RAMIREZ were released pending further investigation.

15. At approximately 2:40 p.m., FIT Agents conducted a knock and talk at the motorhome for several minutes but no one answered the door.  FIT agents continued to knock at the motorhome and an individual, later identified as Freddy GUTIERREZ-Luna, stepped out of the motorhome and stated there were additional individuals inside.  FIT Agents identified themselves as Border Patrol Agents and questioned GUTIERREZ as to his citizenship.  As FIT Agents were interviewing GUTIERREZ, three additional individuals, including one later identified as Nereida REYES-Gutierrez, exited the motorhome.  FIT Agents questioned all four individuals and determined that they were all citizens of Mexico illegally present in the United States with no documents allowing them to remain, travel, or reside within the United States. GUTIERREZ, REYES and the other individuals were placed under arrest and transported to the Calexico Border Patrol Station for further processing.

16. After the arrest of the undocumented aliens at the motorhome, FIT Agents traveled HICKEY's last known address. At approximately 5:00 p.m., FIT agents located the Silverado in the driveway of the registered address in Calexico.  FIT agents conducted a knock and talk at the residence and identified themselves as United States Border Patrol Agents. HICKEY opened the door, stepped out of the house, and was taken into custody by FIT Agents.  HICKEY granted FIT Agents consent to enter the house where they observed RAMIREZ sitting on the living room couch. As agents attempted to take RAMIREZ into custody, she placed an unknown substance into her mouth.  Agents

7

observed RAMIREZ and believed she had swallowed an illegal substance. Emergency Medical Services (EMS) were called to attend to RAMIREZ. At approximately 5:30 p.m., EMS arrived at the residence and RAMIREZ admitted to swallowing a fentanyl pill. RAMIREZ was transported to El Centro Regional Hospital for further observation. During the encounter, RAMIREZ claimed her name was "Alexandra RODRIGUEZ," however, record checks revealed her true name as "Alejandra RAMIREZ-Meza."

17. At the Calexico Border Patrol Station, HICKEY was advised of her Miranda rights. HICKEY acknowledged her rights and agreed to provide a statement without an attorney present. HICKEY stated she is United States citizen and claims she used to work as a manager at a barber shop in Calexico. HICKEY admitted that on today's date (February 23, 2023), she went to Heber and picked up an illegal alien from a white vehicle. HICKEY stated she transported the illegal alien to an RV (motorhome) in Holtville. HICKEY claimed she has picked up illegal aliens on previous occasions. HICKEY admitted to picking up only one illegal alien today. HICKEY admitted having taken illegal aliens to different locations throughout the Imperial Valley in addition to taking them to the RV from today's event. HICKEY admitted to dropping off illegal aliens at the RV approximately two weeks ago. HICKEY admitted she gets paid $400.00 USD in cash per person every time she picks up illegal aliens. HICKEY claims that the RV has been used to stash illegal aliens for about a month.

18. On March 1, 2023, FIT Agents were conducting anti-smuggling operations in Calexico in an effort to locate FLORES and the Chevrolet Cruze. FIT Agents had conducted record checks on FLORES and determined that he was in the country under an expired parole. At approximately 11:20 a.m., FIT Agents located the Chevy Cruze parked across the street of the 800 block of Heffernan Avenue in Calexico. FIT Agents observed FLORES laying underneath the vehicle doing what appeared to be mechanical repairs. FIT agents approached FLORES to question him regarding his immigration status and his involvement in the smuggling event from February 23, 2023. As FIT agents were questioning FLORES, he freely admitted to being on parole in the United States. After

further questioning, FIT Agents determined FLORES was a citizen of Mexico illegally present in the United States with no documents allowing him to remain, travel, or reside within the United States. FLORES was transported to the Calexico Border Patrol Station for further processing.

19. Material Witness GUEVARA stated he is a citizen of Mexico and does not possess any immigration documents that would allow him to work or reside in the United States legally. GUEVARA stated he made smuggling arrangements when he arrived in San Luis with an older man. GUEVARA stated he was going to be charged $8,500.00 USD to be smuggled to Fresno, California. GUEVARA stated that he had made smuggling arrangements with the older man the previous time he tried to enter the United States. GUEVARA stated that he was driven to the United States/Mexico Border Wall by an unknown individual on February 22, 2023. GUEVARA made entry between 11:00 a.m. and 12:00 p.m. on February 23, 2023 by climbing the Border Wall near a place that has a bunch of stores near Mexicali. GUEVARA stated that he later received a call from the unknown smuggler that his ride was there and that a male individual would meet him to give him money so he could pay for a new pair of jeans and shirt. GUEVARA stated that he paid for the clothes and followed a male individual to the parking lot. GUEVARA stated that he got into a white sedan with the male individual. GUEVARA was then driven to a gas station/store and was instructed to get into a newer model gray truck. GUEVARA stated there was five people in the truck including himself. GUEVARA stated he sat in the back seat of the truck and was driven to a trailer where he was instructed to get off. GUEVARA stated he was supposed to get picked up the next day. GUEVARA was shown a photographic lineup display 1B and initially indicated he did not recognize anyone from the lineup. GUEVARA was asked to look at the photo lineup again and identified Photo #1 as the driver of the gray truck that transported him to the trailer. Photo #1 is a photo of HICKEY. GUEVARA was asked what happened to his phone and he stated that the male individual inside of the truck told him to give him his phone and never gave it back.

GUEVARA stated he was going to pay a total of $8,500.00 USD to be smuggled into the United States.

20. During the course of the event, three (3) cell phones were discovered. During a search incident to the arrest of HICKEY, one black Revvl 6 Pro (Target Device #1), one Blue Nord N200 DE2118 cellular telephone (Target Device #2), and one black Apple iPhone (Target Device #3) were discovered on the couch in the living room of 513 East 3rd Street in Calexico, California. This is the residence address of Catherine HICKEY and her parents and the location where HICKEY was apprehended on February 23, 2023. HICKEY claimed ownership of the Target Devices and the Target Devices were seized incident to her arrest.

21. Based upon my experience and investigation in this case, I believe that HICKEY, FLORES, the Material Witness and other persons, as yet unknown, were involved in an alien smuggling venture and that HICKEY used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

22. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on January 24, 2023, up to and including February 24, 2023, the day after the arrest of HICKEY.

## METHODOLOGY

23.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

24.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone, and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Catherine HICKEY used the Target Devices to facilitate the offense of alien smuggling. The Target Devices were likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by HICKEY, FLORES, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_NAVARRE PERRY (Affiliate)_
Digitally signed by NAVARRE PERRY (Affiliate)
Date: 2023.03.03 09:45:13 -08'00'

Navarre Perry, Border Patrol Agent
United States Border Patrol
TFA Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 3rd day of March, 2023.

_Jill Burkhardt_
HON. JILL L. BURKHARDT
UNITED STATES MAGISTRATE JUDGE

12

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    T-Mobile
Model: Black Revvl 6 Pro
IMEI: 869589062083649
Seized from Catherine HICKEY
(Target Device #1)



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**   OnePlus (T-Mobile)
Model: Blue Nord N200 DE2118
IMEI: 990017695029203
Seized from Catherine HICKEY
(Target Device #2)



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:** Apple (Black)
Model: 7 Plus
IMEI: 3594680848322274
Seized from Catherine HICKEY
(Target Device #3)



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target DeviceS for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of January 24, 2023, up to and including February 24, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Devices;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.